CITY OF WAUKON, Appellee, v. SOUTHERN SURETY COMPANY OF NEW YORK et al., Appellants.

No. 41015.

MAY 13, 1932.

E. L. Miller, for appellee.

William Emory Miller and Senneff, Bliss, Witwer & Senneff, for appellants.

ALBERT, J.—On the 25th day of July, 1922, the plaintiff city entered into two written contracts with the defendant Thomas Carey and Sons for the construction of certain paving and other public improvements in said city. On July 31st following, two bonds were issued by the Southern Surety Company of Iowa in which Thomas Carey and Sons were principal and said Southern Surety Company was surety, the bonds running in favor of plaintiff city. This contractor completed both of its contracts on November 23, 1923, and the work was officially accepted by the City of Waukon on December 14th following.

The Eclipse Lumber Company of Waukon was one of the many creditors of Thomas Carey and Sons who furnished labor and material for said public improvements, and who, in due form and within due time, filed their claims therefor with the city clerk.

On February 20, 1926, the Eclipse Lumber Company instituted an action in the United States District Court in which it made defendants, the City of Waukon, Thomas Carey and Sons Company and Southern Surety Company, and many other claimants were made defendants. This action was instituted in equity and asked judgment against the City of Waukon in the sum of $13,627.30 with interest and for general equitable relief. This cause was tried on its merits, and on July 10, 1928, decree was entered in that court dismissing the plaintiff's petition on the ground that the cause of action was barred at the time of the filing of the bill. From that decree the Eclipse Lumber Company appealed to the Circuit Court of Appeals for the Eighth District, and on January 18, 1930, the latter-named court reversed the decision of the United States District Court above referred to, and the opinion therein recites:

"The decree is reversed, except as to the appellee Southern Surety Company, and the case is remanded for further proceedings not inconsistent with this opinion." See 38 Federal Reporter (2nd ser.) 608.

Later, judgment was entered in the above-entitled matter against the City of Waukon in the sum of $17,651.85, with 6% interest from May 3, 1930.

Pending this litigation, the Southern Surety Company of New York, by re-insurance contract, took over a part of all of the liability of the Southern Surety Company of Iowa on the aforesaid bonds, but as no question is raised with reference thereto, we make no distinction between them in this opinion.

On August 26, 1930, the City of Waukon filed in the office of the clerk of the district court of Iowa in and for Allamakee county, its petition at law, making the Southern Surety Company of Iowa and the Southern Surety Company of New York and Thomas Carey and Sons Company, defendants. In this petition the contracts for the public improvement between the City and Carey and Sons are described, and the two surety bonds, hereinbefore referred to, are set out as exhibits. It is alleged that in these surety bonds,—which are identical in their provisions as to the rights, liabilities and duties of the assured,— the assured company "agrees to pay all just claims for material, tools, labor and all other just claims filed against him or any of its subcontractors in carrying out the provisions of the within contracts, and further agrees that its bond shall be held to cover all such claims."

It is further provided that:

"The condition of this obligation is such that if the principal shall faithfully perform the above-mentioned contract on his part and satisfy all claims and demands incurred for the same and shall fully indemnify and save harmless the City of Waukon from all costs and damages which the City may suffer by reason of failure so to do, and shall fully reimburse and repay the City of Waukon all outlay and expense which the City may incur in making good any such default, and shall pay all persons who have contracts directly with the principal as subcontractors for labor or materials, * * * then this obligation shall be null and void," etc.

It is alleged that defendants breached their contracts and bonds in that Thomas Carey and Sons has not, neither has any person for or in its behalf, paid all just claims for materials and other just claims incurred in carrying out the provisions of said

contracts and has not paid all persons who had contracts directly with the principal as subcontractors for labor or material.

It is further alleged that said contracts and bonds were breached in that a large number of claims and demands for materials and labor furnished by subcontractors for the construction of said pavement and said public improvements were filed, etc., and defendants Thomas Carey and Sons and Southern Surety Company of Iowa neglected and refused to pay all just claims so filed against said Thomas Carey and Sons, and because of said failure, an action to adjudicate the amount, priority, and mode of payment of said claims for materials and labor furnished by said subcontractors for the construction of said pavement so filed was commenced on or about February 20, 1926, in the United States District Court for the Northern District of Iowa by the Eclipse Lumber Company, in which action the City of Waukon and the Southern Surety Company and others were defendants, which action finally terminated in a judgment against the City of Waukon in the sum of $17,761.85, with interest, and defendants have neglected and refused to pay the amount of said judgment or a part thereof, and have failed, neglected and refused to indemnify and save harmless the City of Waukon, and all costs and damages which the City has suffered by reason of the failure so to do, and judgment was asked on the said surety bonds in the sum of $20,000.

To this petition of the plaintiff's, the Southern Surety Company of New York and Iowa filed a joint answer in six counts, with two amendments thereto, four counts of which, in substance, amount to a plea in *res adjudicata* growing out of the proceedings in the Federal Court above referred to; and second, a plea of the statute of limitations. A demurrer was filed by the City of Waukon to the aforesaid pleas of *res adjudicata* and the statute of limitations, a jury was waived, a stipulation of facts was made, and the demurrer was sustained by the court. The Surety Companies elected to stand upon their answers and amendments thereto. It was stipulated that the sums sued on were paid by the City of Waukon to the clerk of the United States District Court of the Northern District of Iowa to satisfy the judgment entered in favor of the Eclipse Lumber Company and the Leader Oil Company in the case Eclipse Lumber Co. v. City of Waukon in the amount of $18,611.51. It was further

agreed that this cause should be determined by the court on the pleadings and stipulation of facts, and the court may, without additional evidence, render judgment in accordance with the pleadings and this stipulation, saving all exceptions to the defendants Southern Surety Company of Iowa and Southern Surety Company of New York.

On January 21, 1931, the District Court of Allamakee county entered judgment herein against Thomas Carey and Sons, the Southern Surety Company of Iowa and the Southern Surety Company of New York in the sum of $18,695.25 due on the bonds sued upon and costs, including attorneys' fees. Both Southern Surety Companies excepted to the ruling of the court on the demurrer and to the judgment entry aforesaid; hence this appeal.

But two questions are urged before this court on this appeal: 1. Was the plea of *res adjudicata* made by the Surety Companies good? 2. Was the plea of the running of the statute of limitations available to the defendants?

▆ To consider the question of the plea of *res adjudicata* it is necessary to investigate the proceedings in the Federal Court above referred to. As heretofore shown, that proceeding was in equity, making all parties here concerned parties to the action instituted by the Eclipse Lumber Company, a claimant, and all other claimants were made parties defendant. It can not be doubted that the Federal Court action was instituted in pursuance of Chapter 452, Code, 1924, which provides, among other things:

"Section 10313. Action to determine rights to fund. The public corporation, the principal contractor, any claimant for labor or material who has filed his claim, or the surety on any bond given for the performance of the contract, may, at any time after the expiration of thirty days, and not later than six months, following the completion and final acceptance of said improvement, bring action in equity in the county where the improvement is located to adjudicate all rights to said fund, or to enforce liability on said bond.

"Section 10314. Parties. The official board or officer letting the contract, the principal contractor, all claimants for labor and material who have filed their claim, and the surety on

any bond given for the performance of the contract shall be joined as plaintiffs or defendants.

"Section 10315. Adjudication—payment of claims. The court shall adjudicate all claims. Payments from said retained percentage, if still in the hands of the public corporation, shall be made in the following order:

"1. Costs of the action.

"2. Claims for labor.

"3. Claims for materials.

"4. Claims of the public corporation."

"Section 10316. Insufficiency of funds. When the retained percentage aforesaid is insufficient to pay all claims for labor or materials, the court shall, in making distribution under the preceding section, order the claims in each class paid in the order of filing the same.

"10319. Unpaid claimants—judgment on bond. If, after the said retained percentage has been applied to the payment of duly filed and established claims, there remain any such claims unpaid in whole or in part, judgment shall be entered for the amount thereof against the principal and sureties on the bond. In case the said percentage has been paid over as herein provided, judgment shall be entered against the principal and sureties on all such claims."

The aforesaid chapter is a compilation of the prior existing law, commencing with sections 3102 and 3103, Code, 1897, including House File 254 of the Acts of the 40th Extra General Assembly. To a thorough understanding of the purpose of this chapter of the Code, it is necessary to review the origin and development of the matters covered in said chapter. The rights of labor and materialmen claiming a lien against funds in the hands of a public corporation in public improvement matters, so far as we are able to discover, originated in Chapter 179 of the Laws of the 20 G. A., under an act entitled "An Act to protect subcontractors for labor performed, and material furnished for public buildings and improvements." Section 3 of said Act provides that:

"Any party in interest may cause the adjudication as to the amount, validity, priority and mode and time of payment,

of such claim by equitable proceedings in any court having jurisdiction.''

This Act of the 20 G. A. was elaborated and carried into the Code of 1897 as sections 3102 and 3103.

Provisions were later made for all contractors on public improvements to furnish a bond, under the Acts of the 38th G. A., Chapter 347. The title to this Act provides, among other things:

''An Act requiring public contractors to file a bond for the protection of the parties contracting therewith and for the benefit of those furnishing such contractor with materials used or labor performed in the carrying out of such contract.''

This was followed by an Act known as House File 254, 40th Extra General Assembly. The title to this Act recites that it is an act to amend, revise and codify Chapter 7, title 24, Compiled Code, 1919, relating to bonds for the performance of contracts on public improvements, and to the rights of the persons who furnish labor and material for such public improvements. This Act passed into and became a part of Chapter 452, Code, 1924. It is apparent from a study of these various sections and the numerous acts of the legislature leading up to the matters contained in Chapter 452, that the purpose was, first, to protect subcontractors, laborers and materialmen and to provide means by which they should be paid from the funds due the principal contractor, and that the bond required by statute was all to be made for the same purpose, and the purpose of this chapter in authorizing the bringing of an action in equity and making all parties concerned parties to such action, either plaintiff or defendant, was to deal wholly with the funds in the hands of the municipality due the contractor, and to make equitable distribution thereof among various claimants; and also in the same action, to allow such claimants to avail themselves of the provisions of the bond given by the contractor; hence the provision for making the surety on the bond a party to the action as provided by statute; and the provision in section 10315 that the court ''shall adjudicate all claims'' applies only to those claims which have been properly filed, and such claimants are entitled to participate in the distribution of the funds in the hands of the municipality, or to recover under the provisions of the bond,

and does not apply to the claim of the municipality against the sureties on the bond. We are satisfied that this was the intent of the legislature because section 10323, Code, 1924, which was later passed, which provides "nothing in this chapter shall be construed as limiting in any manner the right of the public corporation to pursue any remedy on the bond given for the performance of the contract," confirms this construction of the statute.

We are not to be understood, in denying the right to the City and the Surety Company to make issue between themselves if they so elect, to try their respective rights in such an equity case as is provided by statute; but what we are saying is that such an issue is not necessarily a part of the equity proceedings provided by statute by reason of the provisions of the law itself, but in such a proceeding they might make such an issue and try it out if they so agree.

Turning now to the pleadings in the Federal case, we find that no cross-petition or action was filed by the City against the Southern Surety Company. While the Surety Company pleads in its answer and amendments thereto denying liability to any of the parties in the action, this does not indicate that it is tendering an issue between the parties and the municipality involving any liability on the part of the surety company to the municipality by reason of the breach of any of the other provisions of the bond. It must be held, therefore, that the liability of the Surety Company on this bond to the City was not in issue in the Federal Court case. The real question in issue there was as to the liability of the Surety Company to the plaintiff in that case, the Eclipse Lumber Company, and the other labor and material claimants.

The sum total, therefore, of the decision in the Federal case in the Circuit Court of Appeals was to hold that the City of Waukon was liable to the Eclipse Lumber Company and other claimants, but that the United States District Court in dismissing the action against the Southern Surety Company was correct on the ground that as against the claimants, the statutory limitation had run, and, therefore, neither the Eclipse Lumber Company nor any of the other material or labor claimants had any right of action against the Surety Company. A reading of the opinion shows that this issue between the City and the

Surety Company was not touched or spoken of in that proceedings. That issue, therefore, as heretofore explained, was not necessarily involved in said proceedings; neither was it made a voluntary issue between the City and the Surety Company. It therefore remained at large for future litigation or adjustment.

Appellant lays stress on the wording of part of section 10313, Code, 1924, which provides for the bringing of this kind of an action to "adjudicate all rights to said fund, or to enforce liability on said bond;" but as we have heretofore explained, that provision of the statute has only to do with those who have furnished labor or material and are seeking, through their claims properly filed, to reach the funds in the hands of the municipality, or to establish their claims as against the surety company, and was not intended in any way to refer to a claim existing in behalf of the city against the bonding company for a breach of the terms of said bond.

The appellant meets this contention by referring to Federal Equity Rule No. 30, governing practice in the Federal Courts. This rule is explained in LeSueur v. Manufacturers' Finance Company, 285 Fed. 490 (certiorari denied 261 U. S. 621). It is there said:

"General equity rule No. 30 *requires* the setting up by answer of any counterclaim *arising out of the transaction* which is the subject-matter of the suit. This requirement was evidently designed to save the courts the necessity of two trials over what to all intents and purposes should be a single suit, and this court has held that a defendant disregarding this requirement thereby waives his counterclaim."

Adverting for a moment to the original action in the Federal Court, the purposes heretofore explained were that the Eclipse Lumber Company and certain other creditors, who were made defendants, were seeking to recover compensation for their labor and material as against the City of Waukon and the Southern Surety Company bonds. There was no counterclaim asserted in that action. The liability sued on was not a counterclaim, but an independent right which the City had against the Surety Company, which could be but was in no way involved in the real litigation in that case. Aside from this, however, the cause of action sued on in the instant case did not accrue until after the

judgment was entered in the Federal Court and the City had paid the same. The bond provides, "shall fully reimburse and repay the City of Waukon all outlay and expense which the City may incur in making good all such default." It is apparent, therefore, that the claim of the City against the Surety Company could not be set up in the Federal Court case. We are unable, therefore, to see where Rule 30 of the Federal practice has any application to the case before us.

Appellant cites numerous Iowa cases governing the question of *res adjudicata*, and bottoms its right to such claim on the theory that, the City of Waukon having omitted to litigate its claim, if any, in the Eclipse Lumber Company case in Federal court under the bond here sued on, cannot, in the present action or any subsequent action, be held to assert such claim or be permitted to recover thereon. As already indicated, the major premise of this proposition is not sustained by the law, on the record made. Especially must this be true in the light of our conclusion and of Section 10323, Code, 1924, as heretofore set out. We conclude, therefore, at this point that the court was right in sustaining the demurrer to the plea of *res adjudicata*.

█ The second question raised by the Surety company in its pleadings is a plea of the statute of limitations. As will be noted, the public improvement involved was completed on November 13, 1923, and accepted by the city council, on December 14, 1923. The present action on the bond was not commenced until August 26, 1930. It is first urged by the appellant that section 10313, Code, 1924, contained the provision that such claimants "may, at any time after the expiration of thirty days, and not later than six months, following the completion and final acceptance of said improvement, bring action in equity," etc. Appellant argues that this action was not brought until long after the expiration of said six months' period. As we have heretofore explained, the provisions of the aforesaid Chapter 452, in which is contained section 10313, provide a method by which these claimants may institute proceedings to recover their claims; and the provision that they may do so at any time after thirty days from the final acceptance of the improvement and not later than six months has to do wholly with the rights of such claimants, and was not intended by the legislature to have anything to do with the claim of the municipality against the

surety company; and this was again emphasized in section 10323, Code, 1924, which is a part of the same chapter. This latter section gives the various parties the right to bring action to adjust the rights of such claimants to funds in the hands of the municipality belonging to the contractor, and to fix the liability of the sureties on the bond for such claims.

■ The rationale of the whole chapter, as heretofore explained, is for the purpose of protecting labor and material claimants, and providing means by which they may be paid; and while in a sense the statute is, in itself, a limitation statute, it is a limitation only as to the matters covered by it, and has nothing to do with the question of liability between a municipality and the surety company.

As we have heretofore indicated, our conclusion is that the right of the City of Waukon to sue the Southern Surety Company did not accrue until after the judgment in Federal Court and the payment of the same by the City. That judgment was dated May 3, 1930, and the judgment was later paid by the City. The present action was instituted August 26, 1930; so if the six-months limitation were available, this action was commenced within six months after the time plaintiff's cause of action accrued.

■ Appellant insists, however, that if it is not right in the above contention, yet the action here brought on these bonds is controlled by section 11007, Codes 1924 and 1927, paragraph 5, reading as follows:

"Unwritten contracts—injuries to property—fraud—other actions. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years."

A reading of the above section shows that it has no application to the instant case. The action herein brought is an action on a written contract, to wit, bonds executed by the Surety Company to the City, and hence is controlled by the next succeeding sub-section of section 11007, which provides that actions on written contracts must be brought within ten years.

Having concluded, therefore, that the defendants have not

shown themselves to be in a position to avail themselves of any of the statutes of limitations, we conclude that the district court was right in sustaining the demurrer to the plea of the statute of limitations.

We find no error in the record which would warrant a reversal.—Affirmed.

WAGNER, C. J., and FAVILLE, MORLING, and STEVENS, JJ., concur.